Federal District Court
District of Colorado.

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**NOV 19 2021**

JEFFREY P. COLWELL
CLERK

Jennifer Emmi

v.

Dean Williams, in his official and individual capacity,

Tricia Vandermork, in her official and individual capacity,

Paul Patterson, in his official and individual capacity,

Deborah Riley, in her official and individual capacity,

Randall Maul, in his official and individual capacity, and

Ryan Long, in his official and individual capacity.

## Motion for Preliminary Injunction and Complaint

Comes now, Jennifer Emmi, pro se and requests a Motion for Preliminary Injunction seeking immediate relief from unconstitutional and otherwise illegal conditions of confinement. 1

### Parties

1. Jennifer Emmi is a Colorado resident who is housed as an inmate at Denver Women's

1

("DWCF")

Correctional Facility located at 3600 Havana Street, P.O. Box 392005, Denver, Colorado 80239.

2. Tricia Vandermark is the Health Services Administrator at DWCF at 3600 Havana Street, P.O. Box 392005, Denver, Colorado 80239.

3. Dean Williams is the Executive Director of the Colorado Department of Corrections ("CDOC"), which oversees DWCF at the above location in Denver, Colorado.

4. Paul Patterson is the Health Services Administrator at Denver Regional Diagnostic Center, at CDOC, located at 3600 Havana Street, P.O. Box 392005, Denver, Colorado 80239.

5. Deborah Riley is Jennifer Emmi's medical "provider" at DWCF, Jennifer Emmi has not met her.

6. Dr. Randall Maul is the Chief Medical Officer of CDOC who also oversees Special Needs Parole at CDOC facilities. He is located in Colorado.

2

7. Ryan Long is the Warden at DWCF under CDOC.

## Jurisdiction

8. Jurisdiction is proper as all parties are located in Colorado, a federal question of law is claimed, and the amount of damages exceeds $75,000.00 (seventy-five thousand dollars).

## Claims for Relief

under 42 USS§1983, 42USS§1988, 4th Amendment, 8th Amendment, 14th Amendment, Article II, Section 20 of the Colorado State Constitution, Americans with Disabilities Act.

9. Jennifer Emmi ("Plaintiff") is an extremely medically vulnerable inmate who is at high-risk of illness, injury or death, and is very immuno-compromised.

10. Plaintiff suffers from several auto-immune and neurological conditions that include, but are not limited to Lupus, Optic Neuritis (a precusor to Multiple Sclerosis), Mixed-Connective Disease, Antiphospholipid

3

Antibody Syndrome, impairment to heart and lung function, inflammatory conditions, eye pain and other pain of the diseases.

11. At intake at DWCF, Plaintiff very specifically detailed her medical issues, outlined limitations, expressed her need for accomodations as a disabled person, and provided several letters from her medical specialists as well as medical records.

12. The letters provided, very specifically outlined, Plaintiff's medications, supplements, vitamins, and the intensive momtoring and the importance of the timliness of her care. In fact, the letters even outlined that if her medical directives were not followed exactly and timely, Plaintiff faces the risk of deterioration and death, (See Letter from Neurologist, Nathan Kung, Exhibit A).

13. Due to her fragile medical condition, Plaintiff is unable to receive many vaccines, including the COVID vaccine and Influenza vaccine.

14. If Plaintiff were to contract COVID-19, it would very likely be fatal. Given her immuno-compromised state and inability for her body to fight illness and disease, any viral, bacterial, or other infection may lead to morbidity.

15. In the last month or so, several inmates that are co-mingled in the general population where Plaintiff is housed, tested positive for COVID-19. Some of these same inmates were required to work in the kitchen, even if symtomatic.

16. The "flu season" as the weather becomes colder toward Winter is upon Colorado. Several inmates are coughing, sneezing and experiencing symptoms of illness who are co-mingled in the general population with Plaintiff. Plaintiff has been battling a sinus infection DWCF refuses to treat and has also gotten other upper respiratory and gastrointestinal viruses due to her weak immune function.

17. Plaintiff is directed medically to

5

have "intensive cardiac monitoring." She
has had almost no cardiac monitoring
and no specialist care since January.
Plaintiff has even been denied her
heart medication and had chest pain
that was excruciating, shortness of
breath, and a resting pulse rate of
148 beats per minute. Such a high heart
rate forces the heart to overwork and
causes permanent damage, swelling,
cardiac edema, and accumulation of
cardiac fluid in her body.

18. Plaintiff is directed to have frequent
clinic visits and was seeing her specialists
at least two times per week to constantly
work toward keeping her as healthy as
possible and prolonging her life. This does
not happen at all, except one instance in months.
19. Plaintiff did have her eyes examined
on November 5th, 2021, by an opthalmologist.
The doctor found Plaintiff's left eye
vision to be very limited and Plaintiff's
right eye has diminished vision as well.
The physician could not understand why
Plaintiff was not being better followed by

neurology and said she should have gone to a neurologist first. Plaintiff expressed her fear to the opthalmologist that she was going blind and the doctor agreed, especially on the left side. Plaintiff now needs glasses she has not needed since early 2020 and the prescription is becoming more and more obsolete as her vision deteriorates. Of note, DWCF did not allow Plaintiff to take her prescription glasses with her for the eye doctor to check them.

20. On November 2, 2021, Plaintiff saw the CDOC Dietician, Karen Perkins. Plaintiff expressed her concerns that all of the food available, even on inmate "Canteen" to buy is terribly unhealthy. Everything is processed, has preservatives, many are loaded with trans fats, and nothing is available for the Plaintiff with her conditions. The dietician agreed and told Plaintiff directly that CDOC could not meet her dietary needs. The dietician stated she would order whatever raw fruits, vegetables, non-gluten

7

chips, and peanut butter was available. To date, none of this type of food has been provided to Plaintiff. Plaintiff has to have her mother put money on her account to buy the best available foods from canteen, but they still cause painful inflammation of Plaintiff's body as well as noticeable swelling and edema.

21. Plaintiff is constantly harassed with regards to her limitations and disabilities and there is an outright refusal to accomodate Plaintiff in accordance with the ADA.

22. Plaintiff has a disease that affects her circulation and has a history of blood clots, pulmonary embolisms and deep vein thromboses. Plaintiff is ordered by her medical doctors and other specialists to not constrict her extremities in any way. DWCF makes Plaintiff wear tight, restrictive shoes that cause swelling and cause a risk of blood clots. DWCF also requires a

8

tight wrist band, tight handcuffs and leg shackles during transport, all of which put Plaintiff at high-risk for potentially fatal blood clots. Plaintiff must comply and risk her life or be punished by staff.

23. Plaintiff is required to go to "Medline" where many inmates are cramped together, coughing, sneezing, and other issues are present while touching the water spigot. to get a drink to take their medications, then touch the shelf by the medication window. None of these surfaces are disinfected between many, many inmates one after the other. Plaintiff is forced to also touch these surfaces then must hold out her contaminated hand to receive her medications in her hand and put them directly in her mouth. There have been times when the Corrections Officer in charge commands all inmates to pull down their masks putting Plaintiff at even greater risk. Plaintiff must comply or she risks punishment. She expresses concern and is dismissed or threatened.

24. Plaintiff saw a medical doctor for the first time at DWCF on November 3, 2021. Plaintiff was very pleased as Dr. Timothy Creany listened attentively and agreed that Plaintiff was a case where a "Staffing" meeting needed to occur quickly. Dr. Creany agreed that Plaintiff needed to be better-protected and ordered a "Lay In" so that her medications and food would be brought to her cell. This relief only lasted a week and a "Staffing" has never occured.

25. Plaintiff now must face the choice of going to Medline and the dining hall to expose herself to viruses, diseases, bacteria, and other things that could cause her illness and cause her morbidity, or stay in her cell and make her own food, protect her immune system that cannot shield her, and risk not taking medications and face potential blood clots, heart issues, or other complications that could lead to her death. At this point, Plaintiff

10

must decide the lesser risk and modality of her death. It is extremely emotionally distressing and her mental health is affected. Her only goal at this time is to be reunited with her three children and she is scared she will not make it out of prison alive or with sight.

26. Plaintiff also faces every day reduced vision and is scared about going blind. She has a history of going blind and there is a risk that if she does, her vision will never return, or will not return fully. Plaintiff has three very young children and vision is important to watch them grow. Losing your vision is a terrible fate for anyone and Plaintiff faces that possibility because DWCF has denied her Intravenous Immunoglobulin treatment every four weeks that is administered through the port she has to her heart. It is an expensive four-day, intensive treatment. DWCF did attempt to administer it once and did it incorrectly wasting much of the costly, precisely-measured product.

27. Plaintiff applied for Special Needs Parole as she has a permanent, chronic, irreversible, and/or terminal condition. She has more than one. Her care is also very costly with her Immunoglobulin alone costing the State of Colorado over $60,000.00 every four weeks just for the medication. Plaintiff was told she did not meet the statutory requirements, which is false and Dr. Creany who saw her on November 3rd agreed and said he would talk to Dr. Maul, the Chief Medical Officer to all of CDOC. To date, nothing has been heard by Plaintiff as to any progress.

28. Plaintiff's counsel is filing a motion to set aside her convictions based on a severe, undisclosed conflict of interest that includes both personal and financial gain by the elected Jefferson County Colorado District Attorney, Alex is King, through the alleged victims, ~~Plaintiff's former husband and two~~

29. Plaintiff was maliciously and wrongfully prosecuted, convicted and

12

Sentenced in her criminal cases.

30. To have any inmate deteriorate, die or become blind at the hands of CDOC is a trajedy. To have a woman wrongfully imprisoned deteriorate, die or become blind and potentially never see her children again, who have been wrongfully and cruelly separated from her with no contact for over twenty-two (22) months is a travesty, especially for the children who are the victims here. They have been kept from their mother and grandmother (who was also threatened with felony prosecution and arrest) by the alleged victims of Plaintiff's criminal cases; her former husband and his immigrant paramour babysitter, who have the children living with them and calling the babysitter "Mom," due to alienation, brainwashing and abuse of the children. Plaintiff will never stop fighting to get back to them to heal and protect them and must live to get on the other side of her personal nightmare.

13

31. Plaintiff has been polite, informative and trying to work with the staff and administration at DWCF. She has written letters, sent KITES (inmate communication system), and done the formal grievances to advocate for her needs and accommodations every, single day. She has communicated directed or through her case manager to the Defendants and has had no success to date. In order to be sure ~~she wasn~~ ~~down~~ nothing could be done prior to filing this Injunction and Complaint, she told staff and administration she would seek relief from the Federal Court. DWCF not only did nothing to mitigate damages, they retaliated by revoking Plaintiff's visit with her mom on November 13th, 2021 at 11am. Plaintiff and her mom had waited two weeks since the last visit and were excited to see each other. Plaintiff's mother drove all the way from Evergreen, Colorado, got a COVID test on site, and waited for her scheduled in advance time. She was told after waiting a period of time, she could not see Plaintiff. Plaintiff was

very upset and so was her mother at the retaliation and further cruel and unual punishment expressed at Plaintiff.

32. Plaintiff has endured a massive amount of pain and suffering for many months. For the last twenty-two months, she has been jailed repeatedly, denied medications, denied treatment, denied basic human needs, ripped from her children's lives, and has felt pain and trauma, emotional damage, extreme distress, that is beyond belief. The torture, cruel and unusual punishment and deliberate indifference to her medical and other needs shocks the conscience. The willful and wanton conduct is extreme and outrageous. Plaintiff has endured the heartbreak and suffering she has and now wants to survive and preserve her vision as much as possible and truly only draws breath in her weary body to be with her children again.

33. Plaintiff seeks immediate relief to save her life and to save as much of her eyesight as possible and to prevent

15

further immediate, irreparable harm to her.

34. Plaintiff seeks to have her medical and basic human needs met and to have accomodations as necessary as a high-risk of illness, immuno-compromised, medically vulnerable, disabled woman at DWCF.

35. Plaintiff further seeks damages and requests Leave to Amend this Complaint to add other necessary parties as they are noticed in accordance with Colorado Revised Statute § 24-10-109.

36. Plaintiff intends to litigate this case and requests a jury of her peers and a monetary amount of $173,800,000.00, which will include claims of additionally Plaintiffs, added when Complaint is amended.

Wherefore, Plaintiff, Jennifer Emmi respectfully requests that this Court

16

Grant her Motion for Preliminary Injunction seeking immediate relief to protect her as an immuno-compromised, high-risk for illness, medically vulnerable, and disabled individual needing her medical needs and reasonable accomodations met by DWCF. Plaintiff further respectfully requests this Court order in the Preliminary Injunction that Plaintiff is able to study Braille at DWCF and has access to a computer to enlarge the print so that she can proceed effectively in this litigation, and that DWCF do everything to meet Plaintiff's medical needs to save her life and her vision as much as possible.

Plaintiff requests respectfully that this document be accepted as an initiating document and Complaint with Leave to Amend to add parties, facts and claims as it becomes appropriate and as timely as possible to avoid unecessary delay.

Respectfully submitted to DWCF Legal Mail Room this ___15th___ day of November, 2021.

11/15/2021    Jennifer Emmi, #191961
3600 Havana Street, P.O. Box 392005
Denver Colorado 80239

17

Jennifer Emmi
3600 Havana Street
P.O. Box 392005
Denver, Colorado 80239

18

*EXHIBIT A*



Date: January 21, 2021

Re: Jennifer Emmi

DOB: 01/16/1978

To Whom it May Concern,

Jennifer Emmi is under my care for multiple conditions, including but not limited to the following conditions:

- Eye pain
- Optic neuritis
- Dysautonomia
- Cutaneous lupus
- Inappropriate Sinus Tachycardia
- Antiphospholipid Antibody Syndrome
- Undifferentiated Mixed Connective Disease

Taken together, these conditions have rendered her disabled, and at high risk for further deterioration. Due to her medical conditions, she requires very frequent clinic visits, and also intensive cardiac monitoring to maintain her health.

She also requires a complex regimen of pharmacological and non-pharmacological treatments to maintain her health status, including the following:
- Intravenous Immunoglobulin 2g/kg given monthly over 4 days each
- Eliquis 5mg twice daily
- Metoprolol SA 50mg twice daily for heart rate control
- Diazepam 10mg daily as needed for chest tightness
- Adderall XR 10mg in the morning and 5mg in the afternoon
- Promethazine 12.5mg 1-2 tablets by mouth as needed for nausea
- Spiriva inhaler 1.25 mcg inhalation spray for shortness of breath
- Spirometer for breathing several times every day
- Omeprazole 40mg twice day
- Valcyclovir as needed for mouth and nose sores 500mg every day
- Hydroxychloroquine 200mg 2 X per day
- Duloxetine HCL 20mg 2 X per day
- Co Q-10 100mg once a day
- Rizatriptan 10mg as needed for headache



- Sumatriptan 100mg as needed for headache
- Nurtec 75mg as needed for headache
- Clobetasol .05% apply twice daily as needed for Lupus rash
- Erythromycin .5% ophthalmic ointment when tear ducts get blocked
- Vitamin D3 50,000 international units once per week
- Ortho B Complex 1 time in the morning
- Cobafolate 1 time in morning
- Multi-Min Chelate 2 times per day
- Several types of essential oils
- SPM Active 2 every morning
- Pulse Oximeter check all day long
- Blood Pressure cuff, check in the morning upon waking and check throughout the day

Please note that her scheduled oral and intravenous medications are time sensitive, and must be given within strict time windows to be effective. If she were taken into custody and any one of these medications were missed or mistimed, this could lead to significant medication complications and deterioration in her condition, including death. She is also at risk of significant morbidity and death if she were to contract COVID-19 while in custody. For these reasons, it is recommended that she be allowed to remain at home during any period of confinement or custody.

Sincerely,

*Nathan Kung, MD*

Nathan Kung, MD
Blue Sky Neurology
4500 East 9th Ave, Suite 740
Denver, CO 80222

# Civil Case Cover Sheet

Parties

Plaintiff: Jennifer Emmi

Defendant: Dean Williams, Tricia Vandermark, Paul Patterson, Deborah Riley, Randall Macul, Ryan Long

Claim: 42 US §1983, 42 US §1988, 4th Amendment, 8th Amendment, 14th Amendment, Article II Section 20 of the Colorado Constitution, Americans with Disabilities Act

Amount in Controversy: $173,300,000

Jury Demand Requested: Yes

Injunctive Relief: Yes, immediate relief requested

Additional Relief/Request: Leave to Amend Complaint to add parties, claims, facts



FIRST-CLASS MAIL
ZIP 80216
041L11220601

neopost
11/18/2021
US POSTAGE $007.53

CERTIFIED MAIL

7008 0150 0001 7353 5465

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**Colorado Department Of Corrections**
Name _Jennita Emmi_
Register Number _191961_
Unit _SD-108_
Box Number _392005_
City, State, Zip _Denver, Colorado 80239_

Clerk of the Court
Byron G. Rogers Courthouse
1929 Stout Street
Denver, Colorado 80294

Legal Mail
For FILING

LEGAL MAIL
DATE REC'D
FACILITY
STAFF LAST NAME
DOC #
OFFENDER LAST NAME