**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 18 2022

JEFFREY P. COLWELL
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03134-GPG

Jennifer Emmi (aka Jennifer Edwards);
Barbara Crist;
VTE, minor child;
AME, minor child; and
DWE, minor child;

      Plaintiffs,

v.

Alexis King, in her Official and Individual Capacities,
Donald Emmi;
Karen Elledge (aka Karen Santos);
Noelle Kerridge, in her Official and Individual Capacities;
Katherine Knowles, in her Official and Individual Capacities;
Samual Stoorman;
Kenneth Knapp;
David Wunderlich;
Cultural Care Au Pair;
Jefferson County, Colorado;
Dean Williams, in his Official and Individual Capacities;
Colorado Department of Corrections;

Colorado Women's Correctional Facility;
State of Colorado;
Jane Does 1 through 50; and
John Does 1 through 50.

Defendants.

## FIRST AMENDED COMPLAINT

Comes now, Plaintiffs pro se, with three minor Plaintiffs through their Next Friend Plaintiff Emmi, and submit this First Amended Complaint.

A. Parties

1. Plaintiff Emmi (aka Plaintiff Edwards) is a resident of Colorado and located at Denver Women's Correctional Facility ("DWCF") at 3600 Havana Street, P.O. Box 392005, Denver, Colorado 80239.

2. Plaintiff Crist is a resident of Colorado

2

and located at 30593 Suncreek Drive, Evergreen, Colorado, 80439.

3. Plaintiff Minor Children ("Plaintiff Minors") are residents of Colorado currently located at 5307 Bear Mountain Drive· Evergreen Colorado 80439. Plaintiff Minors seek relief through this Court by and through their Next Friend and mother, Plaintiff Emmi.

4. Defendant Alexis King ("Defendant King") is a resident of Colorado and is located in her official capacity as the elected Jefferson County District Attorney at 500 Jefferson County Parkway, Golden, Colorado 80401-6020.

5. Defendant Donald Emmi is a resident of Colorado and located at 5307 Bear Mountain Drive, Evergreen, Colorado 80439.

6. Defendant Karen Elledge ("Defendant Elledge") is a conditional resident alien here in the United States on a Green Card from a marriage and a citizen of

3

Brazil. She is located currently at 5307 Bear Mountain Drive, Evergreen, Colorado 80439.

7. Defendant Noelle Kerridge ("Defendant Kerridge" is a resident of Colorado and a Jefferson County Sheriff's Office Investigator located in her official capacity at 200 Jefferson County Parkway, Golden, Colorado 80401.

8. Defendant Katherine Knowles ("Defendant Knowles") is a resident of Colorado and a Jefferson County Deputy District Attorney located in her official capacity at 500 Jefferson County Parkway, Golden, Colorado 80401.

9. Defendant Samual Stoorman is a resident of Colorado and is Defendant Emmi's attorney located at 3400 East Bayaud Avenue, Suite 400, Denver, Colorado 80209.

10. Defendant Kenneth Knapp ("Defendant Knapp") is a resident of Colorado located at 28885 Cragmont Drive, Evergreen, Colorado 80439.

4



11. David Wunderlich ("Defendant Wunderlich") is a resident of Colorado, a Colorado licensed attorney, and is located through his employment at 100 Jefferson County Parkway, Suite 5500, Golden, Colorado 80419.

12. Cultural Care Au Pair is a Massachusetts corporation, located in Boston, Massachusetts at EF Center Boston, 8 Education Street, Boston, Massachusetts 02141. ("Defendant Cultural Care")

13. Jefferson County, Colorado ("Defendant Jefferson County") is located in Colorado and has within it Sheriff's office, District Attorney, Animal Control, Family Services, Planning and Zoning, and the Courts involved in this action.

14. Defendant Dean Williams ("Defendant Williams") is the Executive Director of Colorado Department of Corrections, is a resident of Colorado, and located in his official capacity at 1250 Academy Park Loop, Colorado Springs, Colorado 80910.

15. Colorado Department of Corrections is a Colorado corporation located at 1250 Academy Park Loop, Colorado Springs, Colorado 80910 ("Defendant CDOC")

5

16. Defendant Colorado Women's Correctional Facility ("Defendant DWCF" or "DWCF") is a Colorado Corporation located at 3600 Havana Street, P.O. Box 392005, Denver, Colorado 80239.

17. Defendant State of Colorado ("Defendant Colorado") is a state of the United States where most of the Defendants are located and where all incidents in this action have occured, known at this time.

18. Defendant Jane Does 1 through 50 are reserved as discovery commences and information reveals other defendants involved in this matter to be added as appropriate and necessary. Corporations may also be added.

19. Defendant John Does 1 through 50 are reserved as discovery commences and information reveals other defendants involved in this matter to be added as appropriate and necessary. Corporations may also be added.

6

## B. Jurisdiction

20. Jurisdiction is appropriate in federal Court as there are several questions of federal law, including 42 U.S.C § 1983, 42 U.S.C. § 1988, 1st Amendment, 2nd Amendment, 4th Amendment, 5th Amendment, 6th Amendment, 8th Amendment, and 14th Amendment.

27. Venue is proper in federal court, but there is a genuine question of law whether this case should be removed to the Supreme Court of the United States pursuant to Article III of the United States Constitution in that "all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be party (emphasis added), the Supreme Court shall (emphasis added) have original jurisdiction.

22. There also exists a possibility this case could reveal acts of treason against

7

the United States and citizens of
this great nation.

## B. Factual Background

23. Plaintiff Emmi and Defendant Emmi
met in 2006 and married September
5th, 2010. The couple had three children
Plaintiff VTE, Plaintiff AME, and Plaintiff
DWE, who are still minor children.

24. Plaintiff Emmi met Defendant Elledge
through a mutual acquaintance and Defendant
Elledge worked part-time babysitting the
Emmi children in Summer 2016.

25. Defendant Elledge told Plaintiff Emmi
that her host dad, "Graham," was very
abusive to her, walked in on her changing,
did not provide her a bedroom as required
by the au pair agency, he did not allow
her to eat food he bought, and broke into
her personal email and Facebook accounts.
Defendant Elledge was in the United
States on a J-1 au pair Visa through
Defendant Cultural Care, contracted with

Graham and his two minor twin children who were boys. It was a violation of law for Defendant Elledge to moonlight for money outside of Graham and his children under the J-1 Visa laws.

26. Plaintiff Emmi convinced her husband Defendant Emmi to contract with Defendant Cultural Care and host Defendant Elledge as an au pair with the Emmi family. Plaintiff Emmi wanted to help Defendant Elledge and believed her regarding the abuse she suffered.

27. Despite paying over 5-figures to Defendant Cultural Care for Defendant Elledge to be an au pair for a year, Defendant Elledge convinced a young gentleman in the United States Army to marry her just 4 months after joining the Emmi family in September 2016. Defendant Elledge married January 27, 2017 for a United States Green Card.

28. Defendant Elledge bragged in the

presence of several witnesses that she "could divorce James any time because I got him to sign up as my sponsor for five years."

29. Defendant Elledge knew her abrupt marriage would leave the Emmi family in a bind with child care, so she demanded an hourly wage and a vehicle to drive to continue to help care for the children while their parents worked.

30. By June of 2017, Defendant Elledge grew tired of watching the children and was hired in Plaintiff Emmi's law firm. Soon thereafter Defendant Elledge began working part-time in Defendant Emmi's law firm as well. The Emmi family invited Defendant Elledge to family events and holidays and made her a part of the family.

31. Notably, Defendant Emmi practices marijuana law. Marijuana is legal in Colorado, but federally illegal.

Defendant Elledge as a conditional
resident alien is not legally allowed
to violate federal laws of the United
States and is doing so handling cases,
money, paraphernalia, marijuana, or other
federally illegal products and items.

32. On February 28th, 2019, Plaintiff
Emmi went blind in a grocery store
with her eldest child VTE. She
was rushed to the hospital and remained
in close treatment, with many hospital
stays into the Summer of 2019.

33. In Summer 2019, Plaintiff Emmi
went into remission and the Emmi
family enjoyed a wonderful summer.

34. In September 2019, Plaintiff Emmi
left remission and went back into
treatment. Plaintiff Crist stepped in
driving her daughter to treatments,
bringing the children to visit her while
she remained in the hospital, took her
daughter to many medical appointments,
and was a primary caregiver with

Plaintiff Emmi to the children, Plaintiff
VTE, Plaintiff AME, and Plaintiff DWE.
Plaintiff Crist made dinner, helped with
homework, packed lunches, did grocery
shopping, performed household tasks, and
overall took care of the children while
her daughter, Plaintiff Emmi was ill.
Defendant Emmi was able to work full-
time with the constant help of his
mother-in-law. The children love
their grandmother dearly and she loves
them and has always doted over them.
She had been a constant and stable part
of their entire lives.

35. Defendant Elledge began working for
Defendant Emmi full-time at his new
law firm, Hoban Law Group October
2019. Upon information and belief, Defendant
Elledge and Defendant Emmi began an
extra marital affair at or before this
time.

36. Defendant Elledge told Plaintiff
Emmi while in the Emmi home, "this
is the life I want in America,"

12

Plaintiff Emmi always supported Defendant Elledge and while a bit taken back by the timing and words in her remark, Plaintiff Emmi told Defendant Elledge that Plaintiff Emmi and Defendant Emmi built everything together and worked very hard, and Defendant Elledge could accomplish the same nice life in the U.S.

37. Defendant Emmi grew increasingly agitated with Plaintiff Emmi in the Fall of 2019. Plaintiff Emmi was very depressed from her treatments and the chemicals used. She was given high doses of Solumedrol to attempt to bring her vision back and put her into remission. The steroids given intravenously, caused mood fluxuation and agitation. In addition, the pain was severe, losing vision was scary, and losing her hair was very emotional for Plaintiff Emmi.

38. Plaintiff Emmi engaged in intensive therapy in November 2019 to help deal with the trauma of her declining health, the murder of her brother a couple of years prior that has gone unsolved, and the tension in her marriage.

39. Plaintiff Emmi begged Defendant Emmi to engage in therapy and even marriage counseling recommended by her medical and psychological team. Defendant Emmi refused and became more abusive, even causing bruising on Plaintiff Emmi's arms. Plaintiff Emmi called Family Tree in Jefferson County for guidance and did not want to break up her family.

40. On December 31st, 2019, Plaintiff Emmi was admitted to the hospital, Porter Adventist in Denver, when she went blind again at lunch that day. She was again rushed to the hospital where she remained for several days. Plaintiff Crist and the children, Plaintiffs Minors visited the hospital, but Defendant Emmi never visited his wife.

14

41. On January 8th, 2020, Defendant Emmi came home in a "high state." He woke up the children at nearly 10pm when he arrived and began to wrestle with them. Plaintiff Emmi told Defendant Emmi to put the kids back to bed where she had placed them to sleep hours prior as it was a school night. Defendant Emmi responded by hitting Plaintiff Emmi in her face and said, "Mommy is no fun!" The children were present the whole time.

42. On January 12th, 2020, while up at the family's ski home in Beaver Creek, Defendant Emmi began yelling at Plaintiff Emmi who remained home at the main family home in Evergreen. Defendant Emmi screamed, "What do I need to do to get you out of that house?" He also warned Plaintiff Emmi that he could destroy her and told her she would never get any part of "his empire." Plaintiff Emmi took a picture of her bruised face and texted Defendant Emmi the picture and told

15

him" she would not leave her home or her children and if he wanted to separate, he should go or perhaps she should go. to the police about her face," (exact language to be provided in discovery).

43. On January 13th, 2020, Plaintiff Emmi began a "Safety Plan" recommended to her and packed up some clothes for the children and for her. Plaintiff Emmi knew Defendant Emmi was angry and she. was scared of him. She had lunch with her neighbor, Elaine who immediately noticed the bruises Plaintiff Emmi. tried to cover with makeup. Elaine who is a former FBI agent, as well as her husband John, told Plaintiff Emmi all the neighbors worried because "Donnie is evil." Elaine also expressed she had been scared for some time that "Donnie would hurt or kill you." Plaintiff Emmi told Elaine she was taking the kids to the ranch, a non-profit property she founded, and "letting Donnie cool off."

44. Plaintiff Emmi told Plaintiff Crist her plan, she and the Plaintiff Minors went to the ranch at 28886 Cragmont Drive, Evergreen, Colorado. Defendant Emmi did not object and left his family alone. Very little contact was had.

45. On January 14th, 2020, Plaintiff Emmi texted Defendant Emmi at roughly 1:40 pm and 5:30 pm and asked what he would like to do for his birthday, the 15th and next day. She also texted a picture of their daughter, Plaintiff AME and her puppy sleeping. Defendant Emmi did not respond.

46. At approximately 7:30pm, Defendant Emmi called Plaintiff Emmi screaming at her. He included Plaintiff Crist on the call and accused Plaintiff Emmi of false things. He yelled at Plaintiff Emmi, heard by Plaintiff Crist and said he was coming to take the kids. Plaintiff Emmi said very directly, "Do not come here. Do not trespass. The gates are locked. You

17

are acting crazy. This is private
property. Do not come here." The
conversation, a very elevated volume, was
~~47~~ heard by Ashley Rhoads at the
ranch with her child. She is a
friend of Plaintiff Emmi and former employee.

47. Defendant Emmi broke completely
the ranch gate and the door to
the ranch house. He entered the
home and Plaintiff Emmi told him
to leave. Plaintiff Emmi had been
preparing dinner and had a small,
black-handled, perring knife in her
right hand. Ashley took the knife
from her hand with absolutely no
resistance and tossed it in the
sink and said, "No, no one is getting
in any trouble." Plaintiff Emmi
calmly walked to the living room
couch where their youngest child,
Plaintiff DWE was sitting and
oblivious to anything happening. Defendant
Emmi immediately became more irate
and yelling and took the two older
Emmi children Plaintiffs outside.

48. Defendant Emmi kept escalating the situation telling the older Plaintiff children, "If Mommy had cut my throat, the blood would have dripped all over your face." He admitted this to Plaintiff Crist and was heard saying this awful sentiment to the children, needlessly traumatizing them.

49. Defendant Emmi remained angry and demanded the children leave with him. He showed absolutely no fear of Plaintiff Emmi, and if anything was verbally abusive and very bold. He made the situation scary and traumatizing to everyone. Plaintiff Emmi noticed the au pair had a cake and a birthday banner and grew very confused as it was no one's birthday that day. Defendant Emmi directed the au pair to go with him and the children.

50. Defendant Emmi forcefully took

19

the children despite Plaintiff Emmi begging him to stop. Defendant Emmi left the ranch.

20. Plaintiff Emmi was arrested two days later on January 16th, 2020, her birthday. She was taken to Castle Rock Adventist Hospital where the ER doctor demanded a CT Scan be performed of Plaintiff's Emmi head due to the bruising inflicted by her husband, Defendant Emmi. Plaintiff Emmi told the doctor and deputies what had occured.

22. Plaintiff Emmi spent 8 days in the Jefferson County Detention Center and was denied her medical needs, including her blood thinner, Eliquis. She developed life-threatening blood clots as a result. Plaintiff Emmi was charged with felonies for domestic violence, child abuse, and had an ankle monitor placed at the direct request of Defendant Emmi and protection orders against her were put in place.

53. Defendant Elledge moved into the marital home and into the marital bed directly after Plaintiff Emmi was charged and restrained from her home, her property, her clothing, her entire life, and her three precious children.

54. Defendant Elledge packed all of Plaintiff Emmi's clothes and moved her own clothes into the marital bedroom closet and in the presence of Plaintiff Minors.

55. Plaintiff Crist was allowed to see her grandchildren for some time despite Plaintiff Emmi not being allowed to see or have any contact with her children for whom she was the primary caregiver their entire lives.

56. Defendant Elledge began manipulating and abusing the Plaintiff Minors and having them call her "Mom." She told them their mother wanted to hurt them. Defendant Emmi participated

In brainwashing and abusively alienating
the innocent Plaintiff minors from
their mother. Plaintiff Emmi did all
of the child care. She bought the
groceries, picked the kids up from
school, prepared meals, took the
kids to doctor and dentist appointments
she scheduled, volunteered at the
school, went on a field trips, and
overall was extremely involved in her childrens'
lives in every aspect. When she was
ill, her mother Plaintiff Crist helped
fill the role, but Plaintiff Emmi was
always present and involved. Plaintiff
Emmi children ARE HER LIFE. The
children were always very close with
their mother and grandmother, their
primary caregivers.

57. Due to Defendant Elledge's secret
affair with Defendant Emmi and their
fear they would be discovered, Plaintiff
Crist was cut off from her grandchildren.

58. Plaintiff Emmi filed for Legal
Separation so that the domestic

court could advocate for her children
and allow her to see her children.
That was filed February 7th, 2020.

59. On March 13th, 2020, Defendant Emmi
shockingly transitioned the case to
a divorce case and remained defiant
against letting Plaintiff Emmi or Plaintiff
Crist see the Plaintiff Minors.

60. Plaintiff Crist filed a case for
grandparent's rights as an intervenor
in the divorce case 20DR30090, also
in Jefferson County, Colorado courts.

61. On March 16th, 2020, Defendant
Kerridge, without a warrant pushed her
way into Defendant Crist's home. She
and other officers used excessive force,
nearly shot Plaintiff's Crist's dog,
and brutally ripped Plaintiff Emmi
with an IV in her arm from her
bed, semi-conscious during a treatment
and arrested Plaintiff Emmi on more
bogus charges.

62. Plaintiff Emmi was held for three days in Defendant Jefferson County jail and her IV became infected and she was denied medications again and threw a blood clot in her right arm.

63. On June 12th, 2020, Defendant Emmi testified in domestic court in front of Judge Jamin Alabiso that "Jennifer is an excellent mother" and said Plaintiff Emmi should be with her children. Testimony was given about Defendant Emmi's abuse and cocaine habit as well as drugs he had in the children's reach under his bathroom sink.

64. On June 19th, 2020 Judge Alabiso ruled Plaintiff Emmi must see her children within 14 days and could quickly increase visitation. Plaintiff Emmi was awarded use of the marital ski home and a working marital vehicle out of nine or more the couple had.



85. Judge Alabiso notably said that Defendant Emmi was not credible on June 19ᵗʰ, 2020 on the record.

86. Plaintiff Emmi never got a vehicle as the Court ordered. Plaintiff Emmi and Plaintiff Crist were repeatedly threatened by Defendant Emmi that he would call investigator Kerridge, he would call ADA Knowles, or he would call the DA and have them charged whenever they went to the Court-awarded ski home. The threats were constant by Defendant Emmi and he and Defendant Stoorman used the criminal cases as a weapon constantly.

87. When the time came to see the children, Judge Arp in Jefferson County would not modify the protection orders because Defendant Kerridge and Defendant Knowles had filed more false felony charges. The charges were ridiculous and unfounded.

25

28. Repeatedly falsely charged, arrested, struggling with increasing health issues and unable to see her sacred children, Plaintiff Emmi fell into a deep depression. She contemplated thoughts and ideations of suicide and her mother, Plaintiff Crist helped her to get in-patient therapy.

29. Plaintiff Emmi flew to California August 25th, 2020, right after dealing with another false charge and arrest and checked into an in-patient facility for extreme depression.

30. Plaintiff Emmi was released on October, 23rd, 2020 to pursue cardiac treatment as her Lupus went systemnic and targeted her heart and lungs. She underwent her IVIG treatment and then was admitted to the hospital. Defendant Kerridge and Defendants Knowles, directed by Defendant

Emmi and Defendant Elledge, lied
to Judge Arp and said Plaintiff
Emmi absconded from the mental
health facilty. Plaintiff Emmi
never violated the law in any way
or "absconded" from anywhere. She
only left Triumph Healthcare to
get more intensive medical care
and be hospitalized for serious
heart and lung conditions.

71. Plaintiff Emmi had to medically
remain in California after her
week-long admission and was
transferred the the Transitional
Medical Unit at Mission Hospital.
She remained under their care for
the next two months. Plaintiff
Emmi's heart and lungs could
not handle the altitude in
Colorado and she was forced to
remain in California. Plaintiff
Crist flew out to care for her
daughter.

72. In November, Plaintiff Emmi

discovered for the first time that
Defendant Elledge and Defendant Emmi
had betrayed her and were actively
abusing Plaintiff Minor children. A
psychological report revealed many
facts and the conspiracy that
occured. Plaintiff Emmi had been
purposely set up for criminal charges
and erased from her own life. Most
importantly, her children were harmed.

73. Plaintiff Emmi was arrested again
at the direction of Defendant Kerridge.
She was held down and blood was
drawn from her arm despite her
protests as she had a chest port for
blood draws and treatments and
peripheral blood draws were dangerous
for her with her Antiphospholip
Antibody Syndrome and risk of blood
clots. This occured on November 19th, 2020
in California. Plaintiff Emmi was
told and has paperwork that there
was cocaine present in her blood and
she was being detained. Plaintiff Emmi's
phone was seized without a warrant

and used by "officers" in the jail in front of plaintiff Emmi. Plaintiff Emmi was told Defendant Kerridge directed this and that she was a fugitive. Plaintiff Emmi once again was denied her medications. She was released after paying a $150,000.00 that no one understood or ever showed record of again. Plaintiff Emmi was very sick upon release and needed medical care. Her resting heart rate was near 170 bpm. Hair follicle proved no drugs were ever present.

74. The bondsman in California told Plaintiff Emmi something was very strange and advised her to get security. He recommended a company and Plaintiff Emmi hired them as she now feared for her life and her mother, Plaintiff Crist's life. The company was paid $21,000.00 over the next month or so to guard Plaintiff Emmi and even tooked her in a secured vehicle back to Colorado, directly to Rose Medical Center where she was admitted

by her medical team so she could safely medically acclimate to the altitude with her impaired heart and lungs.

75. Plaintiff Emmi and Plaintiff Crist have consistently fought and tried to get back to Plaintiff Minors to this very day and will never stop.

76. On January 20ᵗʰ, 2021, Defendant Stoorman called Plaintiff Emmi's attorney and offered that if Plaintiff Emmi walked away from the marital assets, he and Defendant Emmi would help with the criminal cases and clear a pathway for Plaintiff Emmi to Plaintiff Minor children. The offer was good until noon on January 21ˢᵗ, 2021. It is now known that Defendant Stoorman was in possession of sealed criminal affidavit documents he got from the DA Alexis King, Defendant King, and Defendant Knowles and Defendant Kerridge.

77. Plaintiff Emmi's attorney found the offer unethical and possibly criminal and did not accept on behalf of his client. Plaintiff Emmi would have accepted as her children are far more important than the assets she worked hard for. Her children mean everything.

78. Plaintiff Crist spent over $30,000 fighting for her grandchildren and on the days leading to her final hearing, Defendants King, Kerridge, and Knowles filed felony criminal charges that were again false and had a warrant for Plaintiff Crist's arrest if she came to court for her grandchildren. She was forced to drop her case and Defendants dropped her criminal case, but continued to threaten her.

79. Plaintiff Emmi was arrested again on January 25$^{t}$, 2021 and held on an unconstitutional

$3,000,000.oo cash only to be paid by her only bond. Defendants subjected her to cruel and unusual punishment. She neared death at less than 87-pounds, emaciated, vomiting with blood present. Her jail time was video recorded and well-documented. The human rights violations against her were extreme and horrendous.

80. Plaintiff Emmi begged for her life and finally agreed to plead guilty for probation so she could get to her medical team and to her children. She also plead so her mother, Plaintiff Crist would not be threatened with prosecution any further. Plaintiff Emmi verbalized over and over there was corruption and wanted an independant prosecutor and change of venue. Barely able to stand, she plead very reluctantly, not knowingly, not voluntarily, not willingly, and with great regret, guilty to charges she did not do.

81. Plaintiff Emmi went to sentencing on August 16th, 2021 and saw Defendant Kerridge and Defendant Knowles there. Defendant Knowles lied over and over once again, there were cameras in the courtroom Plaintiff did not know would be there, and expected to get probation and seven points on her license. Instead, Judge Randall Arp gave her a governing 10-year sentence in prison and aggregate of 39 years in prison because "she does not accept responsibilty" for her crimes and he was "making an example" of her "especially with all the expanded media coverage."

82. Plaintiff Emmi then endured a biased two-day trial for the assets in her divorce case in Defendant Jefferson County court. Plaintiff Emmi got roughly $57,000.00 and Defendant Emmi was awarded the entire marital estate nearing roughly $10 million.

33

83. Plaintiff Emmi was transferred to CDOC (Defendant) under the custody of Defendant Williams on August 30th, 2021. She remains in Defendant DWCF where she is continually denied her medical needs. Plaintiff Emmi is now legally blind in her left eye, with her overall vision deteriorating along with her overall medical health. She nearly died at the hands of the Defendants in Defendant Jefferson County. Now she is further declining under Defendant CDOC, Defendant Williams, and Defendant DWCF. She is in extreme pain and endures constant suffering. Her greatest pain is derived from the separation from her children she has had no contact with for two years.

84. Plaintiff Crist has deteriorated mentally and physically as well. She has been through extreme duress and violation of her rights at the

hands of Defendants. She worries about her grandchildren she has been separated from for nearly two years and is watching her daughter die before her eyes and is helpless to do anything.

85. Plaintiff Minors are in harm's way and have been used and manipulated to advance a cold-blooded conspiracy fueled by the greed of Defendants. They need immediate intervention and to be placed with Plaintiff Crist who is mentally fit, stable, and ready to support them through this ongoing trauma. Plaintiff Minor Children are the victims in this travesty.

86. No one should endure what Plaintiffs have had to over the last two years. The Constitutional, civil, fundamental, and human rights violations are numerous and will shock the conscience of an jury, judge or person.

87. The truth has begun to surface, and new information provided to Plaintiff Emmi and her criminal counsel have caused filing motions to set aside Plaintiff's Emmi's involuntary convictions and pleas. A hearing is set for January 26th, 2022 and family, friends, and supporters of Plaintiff Emmi are hopeful that justice prevails and that Plaintiff Emmi is released from her wrongful imprisonment and reunited with her mother Plaintiff Crist and her children, the Plaintiff Minors.

88. Plaintiff Emmi continues to decline and is losing vision quickly. She is denied access to a computer or to legal research, but will never stop in her pursuit for truth and justice. Mostly importantly she will never stop until she is back with her children, Plaintiff Minors, healing and protecting them. Her strength is drawn from motherhood and that is the greatest force on Earth. Her faith in God and Constitution will prevail.

## D. Statement of Claims

## I. Violation of Constitutional Rights:
Violation of 1st, 2nd, 4th, 5th, 6th, 8th, 14th Amendments

89. Defendants have violated Plaintiffs rights to freedom of speech, freedom of religion, and have denied legal access or ability to petition the Government for redress of grievances. Plaintiffs incorporate 1-88 hereto and hereafter.

90. Plaintiff Emmi is specifically limited to access to a legal forum in Defendant DWCF and there should exist a heavy burden on Defendants to provide this.

91. Plaintiffs are unable to assemble together as a family and as guaranteed as a right. They are further prohibited to express their religious freedom with one another or speak to one another freely. Plaintiffs have been prohibited by speaking, writing, or having any freedom of any expression to one another in any way all in violation of the US Constitution

91. Defendants have falsely charged or allowed to be falsely charged Plaintiff Emmi with felonies and domestic violence and have violated her 2nd Amendment right to keep and bear arms. At this time she is forever barred from her US Constitutional right.

92. Defendants King, Kerridge, Knowles, Jefferson County with the collaboration of Defendant Emmi, Elledge, and Stoorman, and Knapp have violated Plaintiffs' 4th Amendment right to be secure in their "homes, houses, papers, and effects, against unreasonable search and seizures."

93. Defendants as a whole have violated the 5th Amendment to Plaintiffs and Plaintiffs inalienable rights to life, liberty, and property. Due Process was denied by Defendants to Plaintiffs repeatedly.

94. Plaintiff Emmi was forced to

be a witness against herself as
was Plaintiff Crist and Plaintiff
Minors. The deprivation of these
rights were to Plaintiffs' absolute
detriment and a violation of rights.

95. Plaintiffs have a 6th Amendment
right deprived by Defendants. Plaintiff
Minors were never independently
represented or protected in any way.
Witnesses were intimidated by
Defendants and there was never
impartiality in any process Plaintiffs
were subjected to. Plaintiffs were
illegally restricted from their own
funds to secure counsel and a
defense and even threatened hired counsel.

96. Plaintiffs were subjected to
cruel and unusual punishment
as part of a cold-blooded
conspiracy by Defendants in violation
of the 8th Amendment as well
a the pursuit of happiness in
this great nation.

97. Plaintiffs have suffered extraordinarily at the hands of Defendants.

98. Plaintiff Emmi was held on a cash-only, 3 million bond despite never having a failure to appear to assigned court appearances. She was held despite declining seriously and nearly fatally and begging for her life, begging to be released to get medical care.

99. Plaintiffs were denied due process and equal protections of the law by Defendants in violation of the 14th Amendment. Defendants, many who are under oath to do so, did not honor or uphold or support the United States Constitution as provided in the 14th Amendment and the Colorado State Constitution.

100. Defendants violations of law will continue to be articulated as discovery commences and facts revealed.

## II. Civil Conspiracy

101. Defendants, without question, in particular Defendants King, Emmi, Elledge, Kerridge, Knowles, Stoorman, Knapp, Jefferson County, and State of Colorado have participated in a cold-blooded, civil conspiracy, fueled by corruption and greed and directly and proximately harmed Plaintiffs.

## III. Violation of Americans with Disabilities Act, Title II, Section 504 of the Rehabilitation Act

102. Defendants as a whole have violated Plaintiffs Emmi and Crist ADA rights federally guaranteed. Plaintiff Emmi has not had accomodations provided under the ADA by Defendants in any capacity.

## IV. Defense of Marriage Act 100 § 2419

103. Defendants Emmi and Elledge

41

have violated DOMA as both were recognized as married to other spouses and recognized as such by Defendant State of Colorado.

## V. Violation of Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1961-1968

104. Defendant Cultural Care Au Pair and Defendant Elledge have violated RICO and participated in fraud and activities akin to human trafficking of immigrants into the United States under the auspice of "au pair." Defendant Elledge is one of many who came to this country with no intent to share her culture and visit and be a guest of the United States. Defendant Elledge and others planned to fraudulently marry and remain permanently in the US. Defendant Cultural Care is knowingly participating in this illegal activity and it is

42

an abuse of the immigration
system of the US. It opens
the door for domestic terrorists
like Defendant Elledge to enter
our homes and destroy American
families, abuse our children, and
participate in conspiracy like
that which Plaintiffs are
victim to. Further an American
Army hero fell victim to Defendant
Elledge and her manipulations to
come to the US and remain here.

VI. Violation of Alien and Sedition Act
50 U.S.C. §21

105. Defendant Elledge is a foreign citizen
and is a terrorist by violating many
immigration laws, exhibiting extremely
immoral behavior and conduct and abusing
minor children, Plaintiff Minors. Defendant
Elledge targeted Plaintiff Emmi because
"this is the life she wants in American"
and manipulated her way to taking over
Plaintiff Emmi's life and eliminating
Plaintiff Crist from the lives of her

grandchildren. She has repeatedly
lied to public officials and is
continuing to commit crimes and
as such, should be expelled from
the United States and deported
back to Brazil so she is unable
to hurt any more American
citizens. All other Defendants
should also be investigated and
prosecuted accordingly.

## VII. Outrageous, Willful and Wanton Conduct Causing Severe Emotional and Mental Distress

106. Defendants have collectively and
separately directly caused severe
emotional and mental distress, and
ongoing harm to all Plaintiffs. Their
Defendants willful, knowing, malice-filled,
outrageous, wanton conduct caused
the emotional and mental and other
damages to Plaintiffs

107. Ongoing immediate and irreparable
harm caused by Defendants is
continued on the Plaintiffs.

44

## E. Request for Relief

108. Immediate injunctive relief is requested to prevent immediate and irreparable harm, there is a liklihood of success on merits, the injury threat ontweighs any damages to Defendants, and this relief is in line with public interest. That immediate relief is a Temporary Restraining Order against Defendant Elledge for all Plaintiffs. Additionally, Plaintiff minors to take residence with Plaintiff Crist in her home and in their best interest. Plaintiff Emmi respectfully requests release from prison to get to her medical team and children. In the alternative, Plaintiff Emmi respectfully requests Defendants CDOC, Williams, and DWCF as well as Defendant State of Colorado meet Plaintiff Emmi's medical needs so she survives prison and hopes to retain some vision as well as legal access.

109. In general, Plaintiffs request

relief in the form of monetary
damages for violation of fundamental,
inalienable, civil, Constitutional, human
rights and other rights in the
amount of $181,300,000.00 for
all damages to all Plaintiffs up
to and including, but not limited
to all of the above violations of
rights, pain and suffering, severe
emotional, physical, and mental
distress, court costs, and other
redress as this Honorable Court
deems just and warranted.

110. $181,300,000 is $1 million
for each month each Plaintiff
Emmi and Minors were separated
so far from each other. $41.3
million, $1 million for each year
Plaintiff Emmi was wrongfully
convicted. $44 millions for Plaintiff
Crist for $1 million each year since
she gave birth to and raised her daughter
Plaintiff Emmi with integrity and
immense support up to and including
the last two years that

She has watched her daughter's
life wrongfully destroyed as well
as her grandchildren's lives
destroyed at the hands of
these Defendants. Her own life
was crumbled by these Defendants
in their cold-blooded conspiracy
fueled by greed and corruption.
This amount pales in comparison
to the suffering and trauma
these Plaintiffs have endured.
The amount will be used to offer
some solace, but will also be used to
do philanthropic work to better
our broken criminal justice system
and better the community and the
lives within it.

Wherefore Plaintiffs submit this
Complaint (First Amended) and certify
it is true and correct to the best
of our knowledge and respectfully
request relief herein.

This 18th day of January, 2022   Respectfully,

~Jenath~ Emmi (Edwards)

47

neopost
01/14/2022
US POSTAGE $005.10⁰

FC PKG RTL

$005.10⁰

ZIP 80216
041L12206053

Colorado Department of Corrections
Name _Kevin Kami_
Register Number _14196_
Unit _5D_ _106_
Box Number _392005_
City, State, Zip _Denver, Colorado 80239_

United States District Court
Alfred A. Arraj United States Courthouse
901 19th Street, Room A-105
Denver, Colorado 80294-3589

FACILITY
State LAST NAME
DOC #
Lobas
E.mm.
CORRENT LAST NAME
DATE REC'VD
26546
BY
1/15/2